SEDGWICK LLP
ROBERT F. HELFING  Bar No. 90418
robert.helfing@sedgwicklaw.com
HEATHER L. McCLOSKEY  Bar No. 193239
heather.mccloskey@sedgwicklaw.com
801 South Figueroa Street, 19th Floor
Los Angeles, California 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921

Attorneys for Plaintiff
CELS ENTERPRISES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CELS ENTERPRISES, INC., a New York corporation,

Plaintiff,

v.

M. LONDON, INC., a New York corporation, MICHAEL BANNOUT, and DOES 1 through 10, inclusive,

Defendant.

CASE NO. CV12-01537 RGK (PJWx)

**AMENDED COMPLAINT FOR BREACH OF CONTRACT AND TRADEMARK INFRINGEMENT;**

**DEMAND FOR JURY TRIAL**

Plaintiff CELS ENTERPRISES, INC. hereby complains against defendants, M. LONDON, INC. and MICHAEL BANNOUT as follows:

## PARTIES

1.  Plaintiff CELS is, and at all times mentioned herein was, a New York corporation with its principal place of business in Los Angeles, California.

2.  Defendant M. LONDON is a New York corporation with its principal place of business in New York, New York.

3.  MICHAEL BANNOUT is an individual residing in the state of New Jersey, and is Chief Executive Officer of defendant M. LONDON.

1

1        4.    M. LONDON is engaged in the distribution and sales of handbags

2    and other products.

3        5.    CELS is ignorant as to the true names and capacities, whether

4    individual, corporate, partnership, associate, or otherwise, of defendants DOES 1

5    through 10, inclusive, and therefore sues such defendants by their fictitious names.

6    CELS is informed and believes, and thereon alleges, that each of the fictitiously

7    named defendants in responsible in some manner for the injuries and damages

8    alleged by CELS.  CELS will seek leave of the Court to amend this Complaint to

9    show the true names and capacities of the fictitiously named defendants when they

10   have been ascertained.

11       6.    At all times relevant herein, defendant M. LONDON, BANNOUT

12   and DOES 1 through 10, and each of them, was the agent, servant, or employee of

13   each other, or bore some other legal relationship whereby legal liability is imputed

14   from one party to the others.  At all times relevant herein, each such defendant was

15   acting within the course and scope of his or its agency, servant, or employee

16   relationships.  There exists, and at all relevant times, there existed a unity of

17   interest and ownership between each such defendant to each other such that

18   individuality and separateness between them has ceased, and each acted as the

19   alter ego of each other.

20                  **JURISDICTION AND VENUE**

21       7.    This Court has jurisdiction over the claims relating to trademark

22   rights under 15 U.S.C. §§ 1114, 1121(a) and 1125(a), and 28 U.S.C. §§ 1331 and

23   1338.

24       8.    Diversity jurisdiction also exists pursuant to 28 U.S.C. §1332, in that

25   plaintiff is a citizen of the state of California, defendant M. London is a citizen of

26   the state of New York, and defendant Michael Bannout is a citizen of the state of

27   New Jersey, and the amount in controversy exceeds $75,000.

28       9.    Venue is proper in the Central District of California pursuant to 28

1  U.S.C. § 1391(b) and (c) because the contract at issue was made, and/or the

2  obligations and liabilities arose, in Los Angeles County, California. Further, a

3  substantial part of the events or omissions giving rise to the claim occurred in that

4  County.

5  **ALLEGATIONS COMMON TO ALL CLAIMS**

6      10.    CELS is engaged in the design, manufacturing, importation and/or

7  distribution of handbags, footwear, accessories and other products under various

8  labels, prominently including the "Chinese Laundry" label.

9      11.    In or about July 1, 2010, CELS and M. LONDON entered into a

10  written agreement under which CELS granted a license for M. LONDON to use

11  the trademark, CHINESE LAUNDRY, in connection with the sale of handbags,

12  wallets, backpacks, overnight bags and travel bags (the "License Agreement" or

13  "Agreement"). The Agreement would remain in effect for three contract years,

14  expiring on December 31, 2013. As part of the consideration of the grant of the

15  license, M. LONDON was to pay royalties in a certain percentage of net sales. For

16  each contract year, M. LONDON was required to make minimum net sales in a

17  specified amount.

18      12.    Under the terms of the License Agreement, M. LONDON was

19  required to make minimum royalty payments to CELS on a quarterly basis. The

20  fourth quarterly payment for 2011 came due on October 1st of that year. M.

21  LONDON breached the Agreement by failing to make timely payment.

22      13.    The License Agreement further required M. LONDON to provide to

23  CELS certain financial statements relating to its exploitation of the Agreement.

24  The Agreement required M. LONDON to provide those statements within thirty

25  days after the expiration of each quarter. M. LONDON breached the Agreement

26  by failing to provide those statements for the second, third and fourth quarter of

27  2011.

28      14.    In addition, the License Agreement required M. LONDON to expend

1   no less than 3% of its Net Sales for each contract year for consumer advertising
2   and in cooperative advertising with its approved retail customers. M. LONDON
3   breached that obligation by failing to make the required advertising expenditures
4   during the contract year ending December 31, 2011.
5       15.     On December 16, 2011, CELS provided M. LONDON with formal
6   notice that the latter had committed the foregoing material breaches of the License
7   Agreement. M. LONDON failed to cure the foregoing breaches within the period
8   required by the Agreement. Accordingly, the Agreement terminated according to
9   its express terms.
10      16.     Prior to December 16, 2011, CELS received information that M.
11  LONDON was attempting to dump handbags bearing the CHINESE LAUNDRY
12  trademark to a retailer who, according to the terms of the Agreement, was an
13  unauthorized buyer. Accordingly, in its letter of that date, CELS required M.
14  LONDON to confirm that it would make no such unauthorized sales. A copy of
15  the letter is attached hereto as Exhibit "E" and incorporated by reference. M.
16  LONDON failed to make any such confirmation or to respond to the letter in any
17  way.

### FIRST CLAIM FOR RELIEF

### (Breach of Contract against M. London)

20      17.     Plaintiff incorporates the allegations of each foregoing paragraph as
21  though fully set forth herein.
22      18.     CELS has performed all conditions required under the terms of the
23  License Agreement, or its performance has been excused.
24      19.     M. LONDON breached the material terms of the License Agreement
25  without limitation, by failing make its minimum royalty payment for the fourth
26  quarter of 2011, by failing to provide required financial statements for the second,
27  third and fourth quarters of that year, and by failing to make the minimum
28  advertising expenditure for the contract year ending December 31, 2011.

1    20.    CELS is entitled to compensation for all damages caused by the

2    foregoing breaches including, without limitation, the amount of the minimum

3    royalty for the fourth quarter of 2011 ($39,375), expected royalty payments

4    throughout the remainder of the contract term (no less than $564,375), and the

5    value of advertising that M. LONDON was required to conduct during 2011

6    ($90,000) and throughout the remainder of the contract term (no less than

7    $225,000).

8                              **SECOND CLAIM FOR RELIEF**

9          **(Infringement of Registered Trademarks under 15 U.S.C. §1114**

10                            **against M. London and Bannout)**

11   21.    Plaintiff incorporates the allegations of each foregoing paragraph as

12   though fully set forth herein.

13   22.    CELS has used the trademark, CHINESE LAUNDRY, in interstate

14   commerce since no later than January 1983.

15   23.    On May 29, 2007, Robert Goldman secured a registration in the

16   United States Patent and Trademark Office for the trademark, CHINESE

17   LAUNDRY, covering handbags, among other goods,  under Registration No.

18   3246484.  That registration is valid and subsisting.  Goldman granted CELS an

19   exclusive trademark license for this registered mark.  A copy of the certificate of

20   registration is attached hereto as Exhibit "A" and incorporated by reference.

21   24.    On March 7, 2006, Robert Goldman secured a registration in the

22   United States Patent and Trademark Office for the trademark, CHINESE

23   LAUNDRY and CL Logo, covering handbags and other goods, under Registration

24   No. 3065149.  That registration is valid and subsisting.  Goldman granted CELS

25   an exclusive trademark license for this registered mark.  A copy of the certificate

26   of registration is attached hereto as Exhibit "B" and incorporated by reference.

27   25.    On August 17, 2010, Robert Goldman secured a registration in the

28   United States Patent and Trademark Office for the trademark, CHINESE

LA/1161589v1                                    5

1  LAUNDRY and Design, covering handbags, among other goods under

2  Registration No. 3833290. That registration is valid and subsisting. Goldman

3  granted CELS an exclusive trademark license for this registered mark. A copy of

4  the certificate of registration is attached hereto as Exhibit "C" and incorporated by

5  reference.

6  　　　26.　On November 1, 1994, Robert Goldman secured a registration in the

7  United States Patent and Trademark Office for the trademark, CHINESE

8  LAUNDRY, covering shoes, under Registration No. 1861027. That registration is

9  valid and subsisting. Goldman assigned all rights in this trademark registration to

10  CELS. A copy of the certificate of registration is attached hereto as Exhibit "D"

11  and incorporated by reference.

12  　　　27.　CELS has spent large sums of money in advertising and otherwise

13  promoting the sale of its products and has prominently featured the registered

14  trademarks in such promotional activities.

15  　　　28.　CELS' products, sold under the above-mentioned trademarks, are of

16  high quality and, as a consequence, are well and favorably known to the trade and

17  public as being of the best quality and entitled to full confidence. CELS'

18  trademarks are a primary means by which the products are identified as having

19  been produced and sold by CELS.

20  　　　29.　CELS has built up and now has valuable good will connected with its

21  business, and this good will is symbolized by CELS' trademarks.

22  　　　30.　On information and belief, M. LONDON has made unauthorized use

23  of counterfeit marks identical to or substantially indistinguishable from CELS's

24  CHINESE LAUNDRY trademarks. BANNOUT participated in that unlawful

25  activity by authorizing and directing M. London to conduct it.

26  　　　31.　Defendants' unauthorized use of the registered trademarks is likely to

27  cause and, on information and belief, has actually caused confusion in the

28  marketplace by creating the false and mistaken impression that M. LONDON'S

1  infringing products are affiliated, connected or associated with CELS, or that they
2  originate with, or are sponsored or approved by CELS.

3       32.    Defendants' unauthorized use of the registered trademarks has caused
4  and, if not enjoined, will continue to cause, irreparable and continuing harm to
5  CELS in the diminution of value and goodwill of the marks, and in the impairment
6  to serve as designation of source, for which CELS has no adequate legal remedy.
7  Accordingly, CELS is entitled to provisional, preliminary and permanent
8  injunctive relief to compel cessation of all infringing and otherwise harmful
9  conduct.

10      33.    As a direct and proximate result of Defendants' wrongful conduct,
11  CELS has been and will continue to be damaged by, without limitation, a
12  diminution in value of the registered trademarks and in its reputation and
13  goodwill, in an amount to be proven at trial.

14      34.    Defendants made use of the CHINESE LAUNDRY marks, knowing
15  they were counterfeit marks.

16      35.    Defendants' unauthorized use of the registered trademarks was and
17  continues to be knowing, deliberate, willful, fraudulent and without extenuating
18  circumstances.  CELS is therefore entitled to recover three times the amount of
19  actual damages, statutory damages and attorney's fees and costs incurred in this
20  action, and Defendants' profits from the sale of infringing goods.

21              **THIRD CLAIM FOR RELIEF**
22        **(Dilution of Trademarks under 15 U.S.C. §1125(c)**
23              **against M. London and Bannout)**

24      36.    CELS incorporates the allegations of each foregoing paragraph as
25  though fully set forth herein.

26      37.    Through extensive use, promotion, advertising and other means, the
27  trademark, CHINESE LAUNDRY, has been famous within the meaning of 15
28  U.S.C. §1125(c).

38.  Through Defendants' unauthorized use of the trademarks, the Defendants have intended to cause, has caused, and is likely to continue to cause dilution of the distinctive quality of those marks in violation of 15 U.S.C. §1125(c).

39.  The acts of the Defendants are intended to trade upon CELS's reputation, and are likely to tarnish or injure CELS's business reputation.

40.  Unless enjoined by this Court, Defendants' unauthorized use of the foregoing trademarks will continue to cause irreparable and continuing harm to CELS in the diminution of the value and goodwill, and in the impairment to serve as a designation of source, for which CELS has no adequate legal remedy. Accordingly, CELS is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

41.  As a direct and proximate result of Defendants' wrongful conduct, CELS has been and will continue to be damaged by, without limitation, a diminution in the value of the trademarks and in its reputation and goodwill, in an amount to be proven at trial.

42.  Defendants' unauthorized use of the trademarks is knowing, deliberate, willful, fraudulent and without extenuating circumstances. CELS is therefore entitled to recover three times the amount of actual damages, as well as attorney's fees and costs incurred in this action, and Defendants' profits from the sale of infringing goods.

## FOURTH CLAIM FOR RELIEF

### (Common Law Unfair Competition against M. London and Bannout)

43.  Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

44.  The Defendants' conduct constitutes unfair competition in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and injurious to consumers.

45.     The Defendants committed the acts of unfair competition alleged herein with oppression, fraud and malice.  CELS requests the imposition of exemplary damages pursuant to California Civil Code §3294.

## FIFTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code §17200 et seq., against M. London and Bannout)

46.     Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

47.     The Defendants' misconduct constitutes unlawful, unfair or fraudulent business acts or practices within the meaning of California Business & Professions Code §17200.

48.     The Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Plaintiff, for which it has no adequate legal remedy.

## PRAYER FOR RELIEF

PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

1.     On the First, Second, Third and Fourth Claims for Relief, all damages sustained by plaintiff and defendants' profits;

2.     On the Second, Third and Fourth Claims for Relief, three times the damages sustained by plaintiff and three times the defendants' profits;

3.     On the Second and Third Claims for Relief, three times the amount of damages or profits, whichever is greater or statutory damages of up to $2 million per counterfeit mark used by defendants;

4.     On the Fourth Claim for Relief, exemplary damages;

5.     On all Claims for Relief, plaintiffs' costs in this action and reasonable attorney's fees and expenses, and such additional and further relief as the Court deems just and proper.

1    Dated:  June 14, 2012             SEDGWICK LLP

2

3

4                                  By:  *Heather L. McCloskey*

5                                       Robert F. Helfing
                                        Heather L. McCloskey
6                                       Attorneys for Plaintiff
                                        CELS ENTERPRISES, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2       CELS ENTERPRISES, INC. hereby demands a trial by jury on all issues

3  triable by jury.

4

5  Dated:  June 14, 2012                    SEDGWICK LLP

6

7                                           By: _Heather L. McCloskey_____
                                                 Robert F. Helfing
8                                                Heather L. McCloskey
                                                 Attorneys for Plaintiff
9                                                CELS ENTERPRISES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22 and 41

United States Patent and Trademark Office

Reg. No. 3,246,484
Registered May 29, 2007

## TRADEMARK
### PRINCIPAL REGISTER

# Chinese Laundry

GOLDMAN, ROBERT L. (UNITED STATES IN-
DIVIDUAL)
612 N. BEDFORD DRIVE
BEVERLY HILLS, CA 90210

FOR: ALL PURPOSE SPORT BAGS; ALL-PUR-
POSE ATHLETIC BAGS; ALL-PURPOSE CARRYING
BAGS; COSMETIC BAGS SOLD EMPTY; COSMETIC
CASES SOLD EMPTY; GARMENT BAGS FOR TRA-
VEL; HANDBAGS; HIKING BAGS; SHOPPING
BAGS WITH WHEELS ATTACHED; SHOULDER
BAGS; TOTE BAGS; TRAVEL BAGS, IN CLASS 18
(U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 11-1-2005; IN COMMERCE 11-1-2005.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-767,079, FILED 12-5-2005.

PATRICIA EVANKO, EXAMINING ATTORNEY

**EXHIBIT  B**

Int. Cls.: 9, 16, 18, 21 and 25

Prior U.S. Cls.: 1, 2, 3, 5, 13, 21, 22, 23, 26, 29, 30, 33, 36, 37, 38, 39, 40, 41 and 50

**United States Patent and Trademark Office**

Reg. No. 3,065,149
Registered Mar. 7, 2006

## TRADEMARK
### PRINCIPAL REGISTER



GOLDMAN, ROBERT L. (UNITED STATES IN-
DIVIDUAL)
612 N. BEDFORD DRIVE
BEVERLY HILLS, CA 90210

FOR: SUNGLASSES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-4-1983; IN COMMERCE 1-4-1983.

FOR: PAPER STATIONERY; NOTEBOOKS, PENS, PENCILS, STATIONERY-TYPE PORTFOLIOS; LET-TERHEAD STATIONERY, NOTEPADS, ENVEL-OPES, CALENDARS; DESKTOP ACCESSORIES, NAMELY, DESK CALENDARS, DESK FILE TRAYS, DESK STANDS AND HOLDERS FOR PENS AND PENCILS; DESK TOP ORGANIZERS, DESK PADS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 1-4-1983; IN COMMERCE 1-4-1983.

FOR: BAGS, NAMELY, HANDBAGS, PURSES, COIN PURSES, BACKPACKS, LUGGAGE, CLUTCH BAGS, MAKE-UP BAGS SOLD EMPTY, CARRY-ON BAGS, WALLETS AND DUFFEL BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 1-4-1983; IN COMMERCE 1-4-1983.

FOR: LUNCH BOXES, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 1-4-1983; IN COMMERCE 1-4-1983.

FOR: SPORTSWEAR, NAMELY, VISORS, PANTS, SKIRTS, SWEATSHIRTS, SHIRTS, JEANS, T-SHIRTS AND TOPS; INTIMATE APPAREL, NAMELY, UN-DERWEAR, BRAS, CORSETS AND PANTIES; HOSI-ERY, ROBES, SLEEPWEAR, LOUNGEWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 1-4-1983; IN COMMERCE 1-4-1983.

THE MARK CONSISTS OF THE LARGE STY-LIZED LETTERS "CL" BEHIND THE MARK.

SER. NO. 78-433,422, FILED 6-10-2004.

RUSS HERMAN, EXAMINING ATTORNEY

**EXHIBIT C**

# United States of America

### United States Patent and Trademark Office



**Reg. No. 3,833,290**

**Registered Aug. 17, 2010**

**Int. Cl.: 18**

**TRADEMARK**

**PRINCIPAL REGISTER**

GOLDMAN, ROBERT L. (UNITED STATES INDIVIDUAL)
612 N. BEDFORD DRIVE
BEVERLY HILLS, CA 90210

FOR: BAGS, NAMELY, ALL-PURPOSE CARRYING HANDBAGS; PURSES; COIN-PURSES; BACK-PACKS; LUGGAGE; CLUTCHES; MAKE-UP BAGS, NAMELY, MAKE-UP BAGS SOLD EMPTY; CARRY-ONS, NAMELY, CARRY-ON BAGS; WALLETS; DUFFEL BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 8-1-2006; IN COMMERCE 1-1-2007.

OWNER OF U.S. REG. NOS. 1,861,027, 3,065,149, AND 3,246,484.

THE MARK CONSISTS OF A COMPOSITE DESIGN FEATURING FLOWERS, SHOES, LEGS WITH HIGH-HEELED SHOES ON THEM, INSECTS, A BUTTERFLY, AND A WOMAN'S FACE. A HUMMINGBIRD APPEARS IN THE LEFT-HAND CORNER. UNDER THE LEGS, THE WORDS "CHINESE LAUNDRY" APPEAR INSIDE AN OVAL.

SER. NO. 77-352,911, FILED 12-14-2007.

CHRISTINE MARTIN, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

**EXHIBIT D**

Int. Cl.: 25

Prior U.S. Cl.: 39

**United States Patent and Trademark Office**  Reg. No. 1,861,027
Registered Nov. 1, 1994

## TRADEMARK
### PRINCIPAL REGISTER

## CHINESE LAUNDRY

GOLDMAN, ROBERT L. (UNITED STATES
CITIZEN)
612 NORTH BEDFORD DRIVE
BEVERLY HILLS, CA 90210

FOR: SHOES, IN CLASS 25 (U.S. CL. 39).

FIRST USE 4-1-1983; IN COMMERCE
4-1-1983.

SER. NO. 74-471,892, FILED 12-17-1993.

PAUL KRUSE, EXAMINING ATTORNEY

**EXHIBIT E**

ATTORNEYS AT LAW

801 SOUTH FIGUEROA STREET, 19TH FLOOR · LOS ANGELES, CALIFORNIA 90017-5556

*www.sedgwicklaw.com*   213.426.6900 *phone*   213.426.6921 *fax*

# Sedgwick LLP

*Robert F. Helfing*
*robert.helfing@sedgwicklaw.com*

December 16, 2011

*Via UPS Overnight Delivery and Electronic Mail*
M. London, Inc.
c/o Michael Bannout, CEO
213 West 35th Street
New York, NY 10001

Re:  Cels v. M. London – Notice of Material Breach

Dear Mr. Bannout:

CELS Enterprises, Inc. has asked us to represent it in asserting its claim for breach of the License Agreement between it and M. London. On behalf of CELS we provide this formal notice of material breach. To avoid litigation over this matter, we demand that you make all payments due under the Agreement, satisfy all advertising obligations and provide us with all required financial reports within 20 (twenty) days of the date of your receipt of this letter. We further demand your immediate assurance that you will not sell off your current inventory to Zappos or any other unauthorized retailer.

Your company failed to make its scheduled Guaranteed Minimum Royalty ("GMR") for the fourth quarter of 2011, due on October 1st, as required by ¶ 5.2 of the Agreement. On or about November 23rd, you advised CELS that you would make no attempt to satisfy that obligation earlier than January 2012. Miryan Nogueira advised you in her e-mail message of December 12, 2011 that any such delay was unacceptable. Ms. Nogueira also notified you that you had failed to provide the financial reports required under ¶ 5.4 of the Agreement for the second, third and fourth quarters of 2011. You remain in breach of both obligations.

We also note that the partial records you provided on December 14, 2011 reflect that M. London failed to meet M. London's Advertising Obligations under ¶ 6.1 of the Agreement. That provision requires M. London to "spend at least an amount equal to three (3%) percent of its Net Sales for the Contract Year" for consumer and cooperative advertising. Your Minimum Net Sales requirement for the First Contract Year is $3 million, which means that you were required to spend at least $90,000 in advertising. The financial data you provided reflects that you have spent only $9,000 – one-tenth of the required minimum – in advertising during the contract year.

Ms. Nogueira has advised you of CELS's intent to provide notice of material breach. This letter constitutes that notice.

We are aware that you previously attempted to terminate the Agreement. That attempt was ineffective. ¶3.3(b) of the Agreement permits M. London to terminate the Agreement during the First

LA/1126547v1

M. London, Inc.
c/o Michael Bannout, CEO
Re: Cels v. M. London – Notice of Material Breach
December 16, 2011
Page 2


Contract Year only if it "has made all payment of GMR, excess royalty, and advertising obligations . . . due for the First Contract Year." At the time you purported to give notice, M. London had failed to satisfy that provision respecting the Advertising Obligation and possibly in other respects. We also note that, under ¶ 10.2, all notices given under the Agreement must be sent by certified or registered mail, or by overnight carrier. Your purported notice did not satisfy that requirement. For either and both of those reasons, your attempted termination was ineffective.

Under ¶ 9.2(a) of the Agreement, your company has 20 days to cure the breach of the GMR requirement and of the advertising and financial reporting provisions. If you cure within that period, then the Agreement will remain in effect, and M. London will be obligated to honor its obligations for the full three-year term. If, on the other hand, you fail to cure within the 20-day period, the Agreement will terminate. Under ¶ 9.2(a), Cels would then be entitled, not only to the amount of the GMR for the fourth quarter of 2011 and to the value of required advertising that you failed to undertake, but also to the unpaid balance of the GMR for the remaining term of the Agreement, or, that is, $564,375 ($39,375 (4th Quarter 2011) + $245,000 (full year 2012) + $280,000 (full year 2013) = $564,375).

We have also learned that you are seeking to dump inventory at Zappos, to be sold at 50% of wholesale or possibly even less. The Agreement does not permit the sale of licensed products to that online retailer, or to any other unauthorized retailer. Any such sale would constitute a further material breach of contract. It would also constitute a serious violation of Cels's trademark rights, and cause irreparable harm to the CHINESE LAUNDRY brand. Please be advised that, in the event you make any such sale, we will promptly initiate litigation and secure an injunction against you. We will also seek all available monetary damages and other remedies available under the Agreement and trademark law.

Based upon the foregoing, we demand that you pay the fourth quarter GMR, satisfy all advertising requirements, and provide all financial records, within the 20-day period contractually permitted for cure of breach. We also request your immediate confirmation that you have not made any unauthorized sales to Zappos or to anyone else, and your assurance that you will not make any such sales.

Our specification of the foregoing breaches is made without limitation, and we reserve the right to assert other grounds of termination as further breaches are identified.

Very truly yours,

Robert F. Helfing
Sedgwick LLP


RFH:dls
cc: Ms. Miryan Nogueira


LA/1126547v1

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Sedgwick LLP, 801 South Figueroa Street, 19th Floor, Los Angeles, CA  90017-5556.  On June 15, 2012, I served the within document(s):

**AMENDED COMPLAINT FOR BREACH OF CONTRACT AND TRADEMARK INFRINGEMENT; DEMAND FOR JURY TRIAL**

☑     MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

| | |
|---|---|
| MANATT PHELPS & PHILLIPS, LLP<br>ADAM PINES, ESQ.<br>11355 W. OLYMPIC BLVD.<br>LOS ANGELES, CA  90064-1614 | Counsel for Defendants M. London, Inc. and Michael Bannout<br><br>Telephone:  310-312-4000<br>Facsimile:   310-914-5820 |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed this 15th day of June, 2012, at Los Angeles, CA.

*Yvonne Navarro*

Yvonne Navarro

LA/1161589v1